*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

RICHARD LEE LONG,

        *Defendant-Appellant.*

No. 05-5692

>

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 03-00045—James H. Jarvis, District Judge.

Argued: June 26, 2006

Decided and Filed: October 2, 2006

Before: MARTIN and GILMAN, Circuit Judges; SARGUS, District Judge.[*]

---

**COUNSEL**

**ARGUED:** David W. Camp, LAW OFFICE OF DAVID CAMP, Jackson, Tennessee, for Appellant. Steven H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** David W. Camp, LAW OFFICE OF DAVID CAMP, Jackson, Tennessee, for Appellant. Steven H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

    BOYCE F. MARTIN, JR., Circuit Judge. Richard Long appeals the district court's denial of his motion to suppress evidence seized after his vehicle was stopped, based on the police's belief that Long was involved in a reported burglary. For the following reasons, we affirm the district court's denial of the motion to suppress.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

I.

On November 20, 2000, shortly after 4:50 p.m., an unknown citizen called the Knoxville County 911 reporting a burglary occurring at a neighboring residence on Kenilworth Lane. The caller told the 911 operator that the

> ...lady of the house was addicted to drugs; that drug dealers had been removing items, including vehicles, in payment for a drug debt; and that the police had been to that house two or three times in the past week. The neighbor stated that he had just spoken with the husband who lives in the house and that the husband, who was in Tampa, asked him to call the police because the items were being taken against the woman's will.

The caller stated that two black males and one white male were removing pictures and other items from the house and placing them into two pickup trucks. The caller described the pickup trucks as a red S-10 and a black and gray Ford Ranger with an extended cab. The vehicles left the house and the caller suggested that they would be heading towards Cherry Street to get out of the neighborhood.

Officer Harry McGuffee responded to the dispatcher's burglary "in progress" radio broadcast and parked on Cherry Street near I-40 after that hearing the suspects were heading that way and anticipating that they would be accessing the interstate. McGuffee testified that he saw a black male driving a black Ford Ranger heading down Cherry Street with large pictures and mirrors in the bed of the truck. McGuffee asked the dispatcher for a confirmation on the description of the vehicles. He then reported to the dispatcher that a "black Ford Ranger with a bunch of stuff in the back just turned from North Hills south onto Cherry Street." The dispatcher told McGuffee to "go ahead and check that vehicle." McGuffee stopped the defendant, Richard Lee Long, on the entrance ramp to I-40. McGuffee approached the vehicle and asked Long if he was coming from an address on Kenilworth. After Long answered affirmatively, McGuffee removed Long from the vehicle and placed him in handcuffs. McGuffee conducted a pat down on Long and found a loaded pistol, which he removed from Long's person and unloaded. He then continued to search Long, subsequently discovering an aspirin bottle containing a bag of marijuana, a bag of cocaine and several prescription pills. The pills were later determined to be alprazolam, dihydrocodeinone, and diazepam.

In a six-count indictment, Long was charged with one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g), four counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and one count of carrying a firearm in relation to drug trafficking crimes in violation of 18 U.S.C. § 924(c). Long was never charged with burglary because the alleged victim refused to assist in the prosecution. Acting pro se with stand-by counsel, Long filed an amended motion to suppress evidence, alleging that the firearm and drugs were seized in violation of his Fourth Amendment rights. Specifically, Long alleged that McGuffee lacked probable cause to justify an investigatory stop and the subsequent arrest.

After an evidentiary hearing, Magistrate Judge Bruce Guyton recommended the motion to suppress be denied. First, the magistrate found that it was reasonable for the police to rely on the 911 call because the caller was an "honest citizen" under *Illinois v. Gates*, 462 U.S. 213 (1983). Next, while McGuffee may not have had probable cause to arrest Long when he pulled the vehicle over, the detainment was a lawful investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968):

> The Court finds that Officer McGuffee had a reasonable suspicion to stop the defendant based upon the information in the dispatch and his observations. McGuffee saw the defendant's four-wheel-drive pickup truck, which contained

household items and substantially matched the description given in the dispatch. Although Long argued at the hearing that the video did not reveal any household items in the bed of his truck as he passed McGuffee's patrol car, the Court finds McGuffee's testimony that he could see into the bed of the truck from his vantage point to be credible. Additionally, the truck came from the direction reported in the dispatch, was headed in the predicted direction, and arrived at a time that was consistent with its travel from the scene of the burglary...When McGuffee radioed to confirm the description of the vehicle, he learned an additional piece of information that the truck was a Ford, which matched the truck he was following. The Court finds that based upon his personal observations, which matched the information from the dispatcher, McGuffee had reasonable suspicion to conduct an investigatory stop of the defendant.

Finally, the magistrate judge found that McGuffee's removal and handcuffing of Long was legally permissible under two alternative theories. First, McGuffee had probable cause to arrest Long for the burglary after Long admitted that he was coming from Kenilworth. In the alternative, McGuffee reasonably believed that his safety was at risk when approaching Long's vehicle; therefore, handcuffing and frisking Long was a justified part of the *Terry* stop.

On April 9, 2004, the district court adopted the magistrate's report and recommendation and denied Long's motion to suppress. Long then pled guilty to counts one, three and six of the superseding indictment pursuant to a plea agreement he had entered with the government, while reserving the right to appeal the denial of his motion to suppress to this Court. The guilty plea included the counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g), possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and carrying a firearm in relation to drug trafficking crimes in violation of 18 U.S.C. § 924(c). On April 14, 2005, the district court sentenced Long to 180 months in prison. He now appeals the district court's denial of his motion to suppress.

II.

In reviewing a motion to suppress, we review the district court's factual findings for clear error and legal determinations *de novo*. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000). When a district court has denied a motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc). We will overturn the district court's factual findings only if we have the "definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999).

The Fourth Amendment provides "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. AMEND. IV. While an arrest must be supported by probable cause, the police officers are also permitted to make a reasonable investigatory stop, even in the absence of probable cause, as set forth by the Supreme Court in *Terry v. Ohio*. 392 U.S. 1 (1968). A police officer may conduct an investigatory search and seizure "so long as the officer is able to point to specific and articulable facts which give rise to a reasonable suspicion of criminal activity." *United States v. Hardnett*, 804 F.2d 353, 355-356 (6th Cir. 1986) (quoting *Terry*, 392 U.S. at 21-22).

There are two relevant seizures in this case (with an accompanying, related search) that are subject to Fourth Amendment review — first, where McGuffee stopped and detained Long's vehicle; and second, where McGuffee ordered Long from the vehicle, handcuffed him, and

performed the pat-down search of Long in which he discovered Long's firearm.**[1]** Long's subsequent "official" arrest and the additional search subsequent to discovery of the loaded firearm also constituted a seizure and a search, but after discovery of the gun there was probable cause to arrest Long for unlawful weapon possession under state law and to conduct the search incident to arrest, and Long does not challenge these actions.

## A.  The *Terry* stop of the truck

The magistrate found that the police did not have probable cause of involvement in the burglary to stop and search Long's vehicle, because given the time of day and the number of vehicles on the roadways, the description of the truck was not sufficiently distinct.  Further, despite McGuffee's testimony that Long committed a traffic violation before the stop, the magistrate rejected this as the reason the stop occurred.  Rather, the magistrate found the car stop to be justified as a brief detention under *Terry*, based on the information in the dispatch call and McGuffee's observations.  *See United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000) ("The *Terry* doctrine applies to investigative stops of moving automobiles.").  Long claims that the 911 call was not sufficiently reliable to create a reasonable suspicion of his involvement in the burglary to stop his vehicle, and that the vehicle did not sufficiently match the description given to McGuffee by the dispatcher, further undermining the existence of reasonable suspicion.

The magistrate found that the call was sufficiently reliable, because even though the caller did not give his name, he identified the street and house where he lived, the dispatcher was aware of his address, and the police actually pulled up in front of his house before he got off the phone with the 911 operator.  Thus, under *Illinois v. Gates*, the caller counted as a known citizen as opposed to an anonymous tipster.  The magistrate reasoned that under the rationale of *Gates*, the caller would have been subject to penalties for false police reports, and thus could be deemed reliable for the same reason as a known informant would be.

We agree with the magistrate's determination that the call was relatively reliable and relevant to the existence of reasonable suspicion to support the stop here.  Although in some cases, police knowledge of an address from where an otherwise anonymous call is made might not be enough to render the call reliable, the reliability of this call is strongly supported by the fact that in addition to the dispatcher knowing the caller's address, the police pulled up in front of the caller's house while the 911 call was still ongoing.  If the caller turned out to have been lying, the police could have confronted him immediately.  Whether or not the authorities were aware of the caller's name in this situation added little to the reliability determination under *Gates.*

Long further contends that the 911 operator or the police should have done more to corroborate the allegations regarding the burglary and drug use by the woman in the house.  This argument would be relevant if the police were attempting to obtain a warrant based on probable cause and the basis of the information were an anonymous tipster, as set forth in *Gates* and its progeny.  In this case, however, given the lower standard required for the reasonable suspicion required to justify the stop, the fact that the informant's identity was easily ascertainable if not known by the police, and McGuffy's observation of a truck fitting the description of the suspect's vehicle carrying household items, there was sufficient reasonable suspicion based on specific and articulable facts sufficient to justify the stop.  *See Alabama v. White*, 496 U.S. 325, 330 (1990)

---

**[1]**Long's brief purports to challenge the dispatch call, which the magistrate also analyzed as a separate Fourth Amendment question in the report and recommendation.  The dispatch call itself is not a search or a seizure, and does not raise a separate Fourth Amendment claim on its own — if Long had merely been the subject of an incriminating dispatch call, but was never seized or searched, there would be no cognizable Fourth Amendment issue.  Even so, the call is informative for purposes of scrutinizing whether probable cause existed for McGuffee to stop Long.

("[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause.").

Long also challenges the stop based on what he claims was vagueness regarding the description of the truck and the items McGuffee observed in the bed. He argues that because the truck was described as black in the dispatch call, rather than its actual colors of black and gray, and because McGuffee only stated that he saw "stuff" in the back, rather than furniture and mirrors, that McGuffee did not have reasonable suspicion upon seeing the truck to effect the stop. The magistrate found that "McGuffee saw the defendant's four-wheel drive pick up truck, which contained household items and substantially matched the description in the dispatch," and credited McGuffee's testimony as to his observations. Further, we have reviewed the video taken from McGuffee's vehicle that depicts Long's truck passing him, which was submitted to the Court as part of the record on appeal. The view of the items in back is sufficient for the viewer to make out that the truck contained household items, and certainly provides no indication to us that the magistrate's factual findings were clearly erroneous. Long's nit-picking of differences between the description in the call and McGuffee's statement does not undermine the existence of McGuffee's reasonable suspicion that the truck he observed was the one referenced in the 911 call and the dispatch, particularly given his prediction of the direction it would be traveling and the time it would arrive at the highway entrance ramp.

Our analysis in *Hurst* is quite informative on this point, as it shares several factual similarities with this case:

> A car roughly matching the appearance of Hurst's in color and style was reportedly seen outside the Smith residence at the time the burglary occurred. Minutes later, an off-duty officer observed a vehicle matching the reported description traveling southbound away from the vicinity of the Smith residence at high speed, and noted the front grill was missing. When Deputy Iles, in the subject vehicle's reported direction of travel, received this distinctive description and then observed a vehicle matching the description at a location consistent with the time needed to travel to that point from the Smith residence, (i.e., less than a half-hour after the burglary was reported), he had knowledge of specific and articulable facts, which, taken together with reasonable inferences, certainly gave rise to reasonable suspicion of criminal activity. The presence of three persons in the car, rather than two, is a discrepancy that might reasonably be explained in any number of ways and does not defeat the assessment that Deputy Iles had reasonable grounds to investigate further. The investigative stop of Hurst's vehicle was not premised on a mere hunch, but on specific and articulable facts. Considering the totality of the circumstances, the investigative stop was clearly justified.

228 F.3d at 757. In this case, reasonable suspicion was supported by the relative reliability of the tip, McGuffee's observations of the truck matching that given in the tip, the presence of household goods in the truck's bed, and the arrival of the truck in the predicted time frame traveling in the predicted direction. The combination here of these several "specific articulable facts" rendered adequate reasonable suspicion for this stop. *See Gates*, 462 U.S. at 244-45 (finding it relevant to the probable cause determination "that [corroboration] through other sources of information reduced the chances of a reckless or prevaricating tale").

**B. Removal of Long from the vehicle and handcuffing**

Long contends that when McGuffee ordered him from the vehicle and handcuffed him, he exceeded the bounds of a *Terry* stop and had in fact arrested Long at that point, and that this arrest was not supported by probable cause. The magistrate found the removal and handcuffing

appropriate both because probable cause to make the arrest existed at that point, and, presumably as an alternative holding, because the handcuffing was part of the legitimate *Terry* stop of the vehicle.

We affirm the decision that Long's removal from the vehicle and handcuffing did not violate the Fourth Amendment because there was adequate probable cause for an arrest at this point, and find it unnecessary to reach whether the handcuffing was an appropriate part of a *Terry* stop here.[2] The basis of the magistrate's finding of probable cause sufficient to support Long's arrest was the fact that upon approaching the car, McGuffee asked Long if he was coming from Kenilworth, the street where the burglary occurred, and Long said that he was. When he was standing next to the stopped pickup truck, McGuffee was also able to confirm that the items in the back of the truck were mirrors and pictures. These facts, combined with the matching description of the truck that justified his earlier reasonable suspicion, adequately established probable cause to arrest Long at this point.

Long attacks the conclusion regarding probable cause on appeal by arguing that in a state court hearing in 2001, McGuffee only remembered the discussion about where the defendant was coming from after reviewing tapes of his conversation with the dispatcher and other relevant evidence. Long claims that because "Officer McGuffee can only testify as to what was recorded and transcribed and not necessarily from his first hand knowledge or remembrances," we should question his credibility on this point. This argument merely involves a credibility determination, and provides no basis to disturb the magistrate's finding that the conversation occurred, particularly in light of our deferential review of factual findings made below. Given McGuffee's observation that the items in the back matched those that were taken from the house, Long's confirmation that he was coming from the scene of the burglary, and the matching description of the truck, there was sufficient probable cause for McGuffee to arrest Long at this point.

III.

We affirm the district court's denial of Long's motion to suppress, because McGuffee had a reasonable suspicion of Long's involvement in the burglary to initially stop his truck under *Terry*, and because McGuffee subsequently developed probable cause to arrest Long, justifying his removal from the truck, handcuffing, and subsequent search.

---

[2]This Court has approved handcuffing in conjunction with a *Terry* stop in three unpublished cases where there was more of a reason to believe the suspect posed an immediate, violent threat to the officer than is apparent from the record here. *United States v. Powell*, No. 99-5137, 2000 WL 357262 (6th Cir. Mar. 29, 2000) (armed carjacking); *United States v. Monhollen*, No. 97-5855, 1998 WL 152934 (6th Cir. Mar. 24, 1998) (shooting suspect with known criminal history); *United States v. Walker*, No. 94-3521, 1995 WL 141343 (6th Cir. Mar. 31, 1995) (two individuals suspected of dealing drugs, who made furtive hand movements and attempted to flee from police in their vehicle). It is unnecessary for us to address the closer question of whether McGuffee's handcuffing of Long exceeded the bounds of a permissible *Terry* stop because McGuffee had probable cause to arrest Long at this point.