RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOSHUA KELLEY PYLES (17-6334); JASON WHITIS (17-6339),

*Defendants-Appellants*.

Nos. 17-6334/6339

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:17-cr-00068—Joseph M. Hood, District Judge.

Decided and Filed:  September 17, 2018

Before:  GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Robert L. Abell, ROBERT ABELL LAW OFFICE, Lexington, Kentucky, for Appellant in 17-6334.  Benjamin D. Allen, GESS MATTINGLY & ATCHISON, PSC, Lexington, Kentucky, for Appellant in 17-6339.  Charles P. Wisdom, Jr., Lauren Tanner Bradley, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge.  Trooper Brad Ramsey pulled over a car after discovering that its registered owner had an outstanding arrest warrant.  He and other officers found marijuana, methamphetamine, a firearm, and three passengers—but not the owner.  The district court denied a motion by one of the occupants, Joshua Pyles, to suppress the evidence.  A jury convicted

Pyles of a drug and a firearm offense, and the two other occupants of the car, Jason and Robbie Whitis, pleaded guilty—Robbie to the drug and firearm offense and Jason to the drug offense. Two of the three men appealed. Pyles challenges the district court's decision denying the motion to suppress, while Jason Whitis contests the procedural and substantive reasonableness of his 200-month sentence. We affirm.

I.

On April 26, 2017, Robbie Whitis, Jason Whitis, and Joshua Pyles drove from Somerset, Kentucky to Louisville to pick up methamphetamine and marijuana to distribute back in Somerset. On the way home, Brad Ramsey, a trooper with the Kentucky State Police, noticed their car traveling 63 miles per hour in a 70-miles-per-hour zone, amidst other vehicles going much faster. Ramsey followed the car and ran its license plate number through the Kentucky law enforcement database. The database revealed that the car's owner, Angela Burdine, had an outstanding arrest warrant.

Ramsey stopped the vehicle. He approached the car on the rear passenger's side and noticed Pyles stuffing something under a pile of clothes in the back seat. One of the occupants rolled down the window, and Ramsey smelled marijuana. Ramsey called for backup. Together, the officers searched the car and found a loaded .380 caliber handgun, a jar containing marijuana and marijuana cigarettes, a plastic bag containing marijuana, and a shoebox holding over 200 grams of methamphetamine. The officers took the three men into custody. A grand jury indicted all three on drug and firearm charges.

Pyles filed a motion to suppress the evidence. After holding a suppression hearing in which Trooper Ramsey testified, the court concluded that Ramsey had reasonable suspicion to stop the vehicle based on the outstanding arrest warrant of its owner. A jury convicted Pyles of conspiring to distribute methamphetamine and of possessing a firearm to aid the crime.

Whitis pleaded guilty to conspiring to distribute methamphetamine. The probation office calculated a guidelines range of 262 to 327 months, increased in part based on career-offender and leadership enhancements. The court rejected the career-offender enhancement. But it applied the leadership enhancement, ultimately yielding a guidelines range of 120 to 125 months,

based on a statutory minimum of 120 months.  The court varied upward and sentenced Whitis to 200 months.  Pyles and Whitis appealed.

II.

*Motion to Suppress*.  Pyles maintains that the district court should have suppressed the evidence because the traffic stop violated the Fourth Amendment.  We disagree.

To justify stopping a car, an "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  Once an officer discovers that a car's owner has an outstanding arrest warrant, he needs only reasonable suspicion that the owner is in the vehicle.  *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979).  It is fair to infer that the registered owner of a car is in the car absent information that defeats the inference.  *Cf. United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016).

Considerable authority supports this inference.  *See United States v. McBrown*, 149 F.3d 1176 (5th Cir. 1998) (unpublished table decision); *United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014); *Armfield v. State*, 918 N.E.2d 316, 321–22 (Ind. 2009); *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010); *State v. Tozier*, 905 A.2d 836, 838–39 (Me. 2006); *Commonwealth v. Deramo*, 762 N.E.2d 815, 818 (Mass. 2002); *State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996); *State v. Neil*, 207 P.3d 296, 297–98 (Mont. 2009); *State v. Richter*, 765 A.2d 687, 689 (N.H. 2000); *State v. Edmonds*, 58 A.3d 961, 964–65 (Vt. 2012).  *But see State v. Glover*, 422 P.3d 64, 72 (Kan. 2018).  This inference may, however, be defeated by contrary evidence.  *See Armfield*, 918 N.E.2d at 321–22; *People v. Jones*, 678 N.W.2d 627, 631 n.4 (Mich. Ct. App. 2004); *Pike*, 551 N.W.2d at 922; *Neil*, 207 P.3d at 297–98; *State v. Howard*, 766 N.E.2d 179, 183 (Ohio Ct. App. 2001).

Gauged by this rule, Trooper Ramsey had reasonable suspicion to stop this car.  He knew that Burdine owned the car, and he knew that she had an outstanding arrest warrant.  He knew that the car had at least three and possibly four occupants, and he could not tell the gender of the individual in the backseat before he reached the car.  In reviewing the denial of a suppression motion, we construe the evidence in the light most favorable to the government and determine

whether the district court's finding was clearly erroneous. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006). On this record, the district court had ample grounds for ruling that Trooper Ramsey had no information that would defeat the inference that Burdine was in the car when he stopped it.

Pyles' counterarguments come up short. He first argues that the inference that Burdine was in the car does not apply because Ramsey knew there were only three men in the vehicle. But Ramsey consistently stated that, before he stopped and approached the car, he could not determine the gender of the back-seat passenger and could not tell whether there were more passengers in the vehicle.

Pyles next argues that the district court should not have credited Ramsey's testimony because it contained "direct, material contradictions." Pyles' Br. 22. But given Ramsey's uncertainty about the third passenger's gender and given his uncertainty about the existence of other passengers in the vehicle, it is unsurprising that he did not see a woman in the car when he decided to stop it. That Ramsey agreed with defense counsel that "the information available to [him] at the time that the car stopped along the interstate" was that there were three men in the car does not defeat that finding. R. 37 at 21. It may be in tension with Ramsey's statement that he did not know the third passenger's gender when he stopped the car, but it is not inconsistent with his belief that other people could have been in the car. Ramsey's testimony was not "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Pyles last of all analogizes his case to civil cases in which courts have refused to credit conflicting affidavits submitted after witnesses have been deposed. But Ramsey testified just once, and the district court made findings based on his testimony that the record supports. No error occurred.

*Procedural Reasonableness.* Whitis challenges the procedural reasonableness of his sentence, urging us to conclude that the district court erred in failing to consider his mental and physical health in determining the appropriate sentence. Because Whitis did not raise this issue below, even after the district court asked if he had any objections to his sentence, Whitis can

prevail only if he shows that the district court made a plain error that affected his substantial rights and the fundamental fairness of the sentencing proceeding. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc).

Sentencing precedent requires a district court to consider the parties' arguments and offer a reasoned basis for rejecting them. *Rita v. United States*, 551 U.S. 338, 356 (2007). But the district court need not explicitly respond to every argument a defendant puts forward. *United States v. Gunter*, 620 F.3d 642, 646–47 (6th Cir. 2010). No plain error occurred here.

In his sentencing memorandum, Whitis asked for a downward variance based on several of the § 3553(a) sentencing factors. Among other things, he argued that his history of chronic drug abuse and his physical and mental health warranted a lower sentence. The district court did not explicitly discuss Whitis's health at the sentencing hearing, and Whitis did not bring it up. But the court showed familiarity with the arguments in Whitis's sentencing memorandum. It discussed the more material aspect of his personal characteristics—his history of drug abuse—and explained why that did not affect its sentencing decision. It looked at the § 3553(a) factors. And it explained that it was imposing a sentence above the guidelines range because the range understated Whitis's criminal history. While the district court might have said more, and indeed could have said more, it said enough to satisfy us that it did not clearly violate the procedural requirements in this case.

*Substantive Reasonableness*. Whitis also raises a substantive reasonableness claim—that his sentence was longer than it should have been. That is a difficult claim to support because we give considerable deference to a district court's decision about the appropriate length of a sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

No abuse of discretion occurred. While the district court varied substantially upward in imposing a 200-month sentence, it appreciated the point and nonetheless concluded that Whitis's guidelines range did not adequately account for his criminal history. "[B]ut for the fact that some of these convictions were old" and "some of them had been reduced down," the court stated, the career-offender enhancement would have applied and Whitis's guidelines range would have been 262 to 327 months. R. 105 at 14. Most notably, the court explained that Whitis's

burglary and robbery charges were reduced from first-degree to second-degree even though he had entered a woman's home with a deadly weapon, threatened to harm her and another woman with the weapon, and taken over $500 in goods. It then reasoned that this variance was necessary to provide just punishment, protect the public, and adequately deter Whitis from continuing to break the law. That was reasonable. We have no warrant to reweigh the § 3553(a) factors ourselves.

For these reasons, we affirm Pyles' conviction and Whitis's sentence.